# EXHIBIT A

 West Virginia E-Filing Notice

CC-19-2023-C-55

Judge: David Hammer

**To:** Roundpoint Mortgage Servicing Corporation
209 West Washington Street
Charleston, WV 25302

---

# NOTICE OF FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA
Darryl Beans v. First Home Mortgage Corporation
CC-19-2023-C-55

The following complaint was FILED on 3/23/2023 10:14:52 AM

Notice Date:    3/23/2023 10:14:52 AM

Tina Renner
CLERK OF THE CIRCUIT COURT
Jefferson County
PO Box 1234
CHARLES TOWN, WV 25414

(304) 728-3231
circuitclerk@jeffersoncountywv.org

CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA**

**DARRYL BEANS,**

  **Plaintiff,**

**v.**            **Civil Action No. _____**

**FIRST HOME MORTGAGE CORPORATION, FIRST GUARANTY
MORTGAGE CORPORATION, ROUNDPOINT MORTGAGE
SERVICING CORPORATION, and
RUSHMORE LOAN MANAGEMENT SERVICES, LLC,**

  **Defendants.**

## COMPLAINT

Plaintiff Darryl Beans, by and through counsel, Stephen G. Skinner and Skinner Law Firm, states as follows for his Complaint:

## INTRODUCTION

Darryl Beans purchased a home in Harpers Ferry, West Virginia, from his mother, Patricia Bigden. To finance the purchase, Mr. Beans entered into a mortgage loan note with First Home Mortgage Guaranty Corporation. The note was secured with a deed of trust granting a security interest to the lender. As part of the loan transaction, the parties agreed that there would be an escrow account established from which the lender, or its agents, would pay the property taxes and hazard insurance on Mr. Beans' home. Mr. Beans relied on the lender's promise to manage payment of the property taxes, so he was shocked when, in 2019, he received notice that his 2016 Jefferson County property tax had not been paid and that one parcel had been sold to an individual, Erlin Delatorre. When neither the lender or its mortgage loan servicer agents would assist Mr. Beans, he

struck a deal himself with Delatorre for repurchase of the lot. Subsequently, Mr. Beans was unable to refinance his loan as a result of the derogatory information related to the failure to pay the taxes.

## PARTIES

1.      The Plaintiff, Darryl Beans, is a resident of Jefferson County, West Virginia, with his residence being at 1398 Rolling Lane, Harpers Ferry, West Virginia.

2.      Defendant First Home Mortgage Corporation, ("First Home") is a corporation registered with the West Virginia Secretary of State's Office to conduct business in this state with its principal place of business in Baltimore, Maryland.

3.      Defendant First Home is the lender of the mortgage loan securing the Plaintiff's residence in Harpers Ferry, West Virginia.

4.      Defendant First Guaranty Mortgage Corporation ("First Guaranty") is a limited liability company registered with the West Virginia Secretary of State's Office to conduct business in this state with its principal place of business in Plano, Texas.

5.      Upon information and belief, First Home transferred servicing rights for Plaintiff's mortgage loan to First Guaranty effective April 1, 2016.

6.      Defendant Roundpoint Mortgage Servicing Corporation ("Roundpoint") is a limited liability company registered with the West Virginia Secretary of State's Office to conduct business in this state with its principal place of business in Fort Mill, South Carolina.

7.      Upon information and belief, Defendant Roundpoint acquired servicing rights for Plaintiff's mortgage loan effective April 5, 2016.

8.    Defendant Rushmore Loan Management Services, LLC ("Rushmore") is a limited liability company registered with the West Virginia Secretary of State's Office to conduct business in this state with its principal place of business in Irving, Texas.

9.    Upon information and belief, Defendant Rushmore acquired servicing rights for Plaintiff's mortgage loan on or around May 2, 2018 and retained servicing rights until February 2, 2022.

## JURISDICTION AND VENUE

10.    Mr. Beans incorporates the preceding paragraphs by reference.

11.    This Court has jurisdiction pursuant to W. Va. Code § 51-2-2 because the amount in controversy is in excess of $7,500 and because most if not all the acts that form the basis for the claims occurred in West Virginia.

12.    Venue is proper in Jefferson County pursuant to W. Va. Code § 56-1-1 because all three Defendants do business in Jefferson County and the Plaintiff's residence is in Jefferson County.

## FACTS

13.    Mr. Beans incorporates the preceding paragraphs by reference.

14.    On February 19, 2016, Mr. Beans financed the purchase of his home at 1398 Rolling Lane in Harpers Ferry, West Virginia, with a note for $118,131.00 secured by a deed of trust on the home. *See* Exhibit, A, Note; Exhibit B, Deed of Trust.

15.    Mr. Beans's residence consisted of two separate parcels of real property, As described in the loan documents, the residence includes:

3

Lot 11, Section 1-J, SHANNONDALE, as more particularly shown and described on the plat by W. R. Amos, Surveyor, dated November 1961 and recorded in Deed Book 252 at Page 385 in the Clerk's Office of the County Commission of Jefferson County, West Virginia. AND Lots 1 and 2, Section 3-J, SHANNONDALE, as more particularly shown and described on the plat by W. R. Amos, Surveyor, dated November 1962 and recorded in Deed Book 256 at Page 456 in the Clerk's Office of the County Commission of Jefferson County, West Virginia. APN #: 23A 0213

*See* Exhibit B, Deed of Trust.

16.    The two parcels financed by the Note and Deed of Trust, Lot 11, Section 1-J ("Lot 11"), and Lots 1 and 2, Section 3-J ("Lots 1 and 2"), are taxed by Jefferson County as two separate parcels. *See* Exhibit C, Tax Ticket for Lot 11, Exhibit D, Tax Ticket for Lots 1 and 2.

17.    As a term of the loan agreement, Mr. Beans agreed to the payment of the Jefferson County Property taxes on each of these tax parcels through an escrow account. *See* Exhibit B, Deed of Trust; Exhibit E, Impound Account Authorization.

18.    A portion of each of Mr. Beans's monthly payment funded that escrow account. *See* Exhibit B, Deed of Trust; Exhibit E, Impound Account Authorization.

19.    The terms of Deed of Trust require that First Home, as Lender, disburse the amounts owed for escrow items, including "taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the property." Exhibit B, Deed of Trust.

20.    The deed of trust specifically obligated First Home pay the escrow items like taxes within the time specified under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(g). Exhibit B; Deed of Trust.

21.    In West Virginia, county property taxes for a given year are due in two installments, the first on September 1 of the tax year and the second on March 1 of the

4

next year. Therefore, for tax year 2016, the first installment of Mr. Beans' property taxes was due on September 1, 2016; the second on March 1, 2017.

22.    Despite the terms of the deed of trust, Defendants, or its mortgage loan servicing agents First Guaranty, Roundpoint, and Rushmore, failed to pay Mr. Beans's county property taxes from escrow property taxes for 2016, in whole or in part, for Lot 11. *See* Exhibit F, Tax Lien Deed.

23.    In fact, upon inquiry, both Defendant Roundpoint and Defendant Rushmore stated that they had record of only one tax parcel, Lots 1 and 2.  Exhibit G, March 29, 2022, correspondence from Roundpoint; Exhibit H, February 24, 2022 correspondence from Rushmore.

24.    Even though Defendants Roundpoint and Rushmore claimed knowledge of only one tax parcel, both servicers continued to charge and collect from Mr. Beans the monthly payment based on escrow charges for two tax parcels.

25.    Mr. Beans relied on the promises in the loan documents and believed that the Defendants were disbursing property tax payments to Jefferson County for both parcels, Lot 11 and Lots 1 and 2.

26.    Unaware that the Lot 11 taxes had not been paid, Mr. Beans continued to make his monthly mortgage and escrow payments in full and as usual.

27.    Defendants continued to accept Mr. Bean full monthly payments despite the fact that they failed to make the required tax payments on Lot 11.

28.    Mr. Beans was shocked when, on January 12, 2019, he received a certified letter stating that Erlin Delatorre purchased the tax lien on Lot 11 on November 14, 2017.

5

29.    Mr. Beans immediately contacted Roundpoint to ask why he had received the notice to redeem.  In fact, for more than a week, Mr. Beans continuously contacted Roundpoint, but never got any straight answer.  Instead, he got the run-around.  He was transferred from representative to representative and department to department.

30.    Finally, Roundpoint denied any knowledge that Lot 11 was a part of Mr. Beans residence.  Roundpoint denied having any responsibility to disburse escrow funds for taxes on Lot 11.

31.    Still relying on the Defendants' representations that they had collected escrow amounts for the taxes on Lot 11, Mr. Beans contacted the Jefferson County Tax Office.  The Tax office did not answer Mr. Beans' questions but told Mr. Beans that he could obtain all relevant from the County Clerk.

32.    When Mr. Beans obtained the tax deed and supporting documents, he discovered that First Home had received the same certified mailing on January 14, 2019, but despite its obligations under the deed of trust, First Home did not exercise the right to redeem.

33.    No other Defendant or agent of First Home exercised the right to redeem.

34.    On April 1, 2019, Erlin Delatorre received the deed Lot 11. Exhibit F, Tax Deed, p. 1.

35.    Including all fees and costs, Erlin Delatorre paid $775.00 for Lot 11. Exhibit F, Tax Deed, p. 3.

36.    When Mr. Beans fully understood that Defendants had allowed his home to be sold out from underneath him, he felt extreme anxiety and stress at the idea that he

could be ejected from the home that he had saved money for and had worked hard to maintain.

37.    When Mr. Beans realized his home had been sold at a tax sale, he realized the public nature of that process and realized that the sale information had been published, including his name and the location of his property.

38.    Concerned that he was going to lose a portion of the land underneath his home, Mr. Beans contracted with Erlin Delatorre, who agreed to let Mr. Beans re-purchase Lot 11 for $3,000.

39.    Further, even though the Defendants and their agents know the Beans home was sold to a third party, they have done nothing whatsoever to fix the problems.

40.    The impact of the Defendant's failures and omissions on Mr. Bean's life did not end with his repurchase of his own property,

41.    In or around the early part of 2021, Mr. Beans sought to refinance his mortgage loan in order to build a garage on his property.

42.    In March 2021, Mr. Beans received a request that he provide his potential refinance lender a letter of explanation regarding the April 1, 2019 "foreclosure."

43.    Mr. Beans provided the requested letter, explaining that the property had not been foreclosed on, but that it had been sold at tax sale due to his mortgage loan servicer's failure to pay property taxes.

44.    Regardless, on or around May 5, 2021, First Guaranty Mortgage Corporation, sent Mr. Beans a denial of the refinance, stating the principal reason for

denial as "garnishment, attachment, foreclosure, repossession, or collection action or judgment."

45.     Astonishingly, First Guaranty denied Mr. Beans refinancing on the basis of an escrow error for which it and its successors bear responsibility.

## COUNT I - WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
### Debt Collection

46.     Defendant Beans incorporates the preceding paragraphs by reference.

47.     Defendants violated W.Va. Code § 46A-2-127(d), which prohibits "any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding" each and every time charged and collected escrow amounts from Mr. Bean for the taxes on Lot 11 because the Defendants claim that they had no knowledge of Mr. Beans' ownership of Lot 11 and never disbursed those payments from escrow.

48.     By continuing to collect escrow payments for property taxes while failing to tell Mr. Beans that the property taxes were due to the Erline Delatorre, Defendants violated W. Va. Code § 46A-2-127(c), which requires a debt collector to "clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money."

49.     By continuing to collect property taxes for Lot 11 with no intention of disbursing those amounts to satisfy those taxes, Defendants violated W. Va. Code § 46A-2-127(h) which prohibits "any false representation or false impression about the status or true nature of or the services rendered by the debt collector or his business."

8

50.    By collecting escrow amounts from Mr. Beans for the taxes on Lot 11 and failing to disburse those amounts, Defendants violated W. Va. Code § 46A-2-128, which prohibits a debt collector from using unfair or unconscionable means to collect a claim.

51.    As a result of the violations of the WVCCPA, Mr. Beans is entitled to all damages allowed by law, including attorney's fees.

## COUNT II – UNJUST ENRICHMENT

52.    Mr. Beans incorporates the preceding paragraphs by reference.

53.    Defendants, continued to collect mortgage payments in the amount of $793.89 every month since the origination of the loan, before and after the tax sale in November 2017.

54.    This monthly payment included $238.39 paid towards escrow, moneys that should have been applied to Mr. Beans' tax obligations long before his property was sold at auction.

55.    Defendants received payments from Bean extracted by unlawful loan servicing and collection efforts.

56.    First Home and its agents, First Guaranty, Roundpoint, and Rushmore violated multiple statutes specifically protecting consumers while acquiring payments from them. By violating those consumer protection statutes, Defendants unjustly extracted monetary payments from Mr. Beans.

57.    Defendants have been unjustly enriched, and it would be inequitable for Defendants to retain Mr. Beans's escrow payments or any fees earned as a result of collecting those fees.

9

58.    As a direct and proximate result of these violations, Defendants caused Mr. Beans to suffer damages.

### COUNT III – BREACH OF CONTRACT

59.    Mr. Beans incorporates the preceding paragraphs by reference.

60.    First Home and its agents, First Guaranty, Roundpoint, and Rushmore, breached its agreements and contracts with Mr. Beans including, among other things, by failing to use the escrow account to pay for the real estate property taxes.

61.    First Home and its agents breached its agreements and contracts by failing to treat Mr. Beans as it had agreed to under the contract.

62.    First Home and its agents collected escrow charges from Mr. Beans and did not disburse those amounts as required by the contract.

63.    First Home and its agents breached its agreements and contracts by failing to abide by the implied covenant of good faith and fair dealing.

64.    As a result of First Home and its agents' breaches, Mr. Beans sustained damages.

### COUNT IV – GROSS NEGLIGENCE/BREACH OF FIDUCIARY DUTY

65.    Mr. Beans incorporates the preceding paragraphs by reference.

66.    By agreeing to collect, escrow and pay Mr. Beans's taxes First Home, First Guaranty, Roundpoint, and Rushmore created a special and fiduciary duty to Mr. Beans.

67.    The Defendants each assumed the obligation to pay the property taxes on Mr. Beans's home.

68.    First Home and its agents, First Guaranty, Roundpoint, and Rushmore owed Mr. Beans a duty to exercise reasonable and prudent due care in servicing the mortgage loan account and to promptly pay escrow items out of the escrow account.

69.    First Home and its agents, First Guaranty, Roundpoint, and Rushmore failed to exercise reasonable care and prudence in the accounting of the loan it had with Mr. Bean, in impermissibly billing unnecessary charges to the loan, in failing to make payments for real estate property taxes, and the handling and reinvestigation of the property taxes owed which resulted in a failure to redeem the property during the redemption period.

70.    By failing to pay the taxes on Mr. Beans's home, First Home, First Guaranty, Roundpoint, and Rushmore breached their special and fiduciary duties to him.

71.    As a proximate result of these breaches Mr. Beans has suffered the loss of their home, damage to his credit, humiliation, annoyance, inconvenience, anxiety, impairment of the capacity to enjoy life, mental anguish, and personal embarrassment and other damages as will be proven at trial.

72.    The actions and inactions of First Home and its agents, First Guaranty, Roundpoint, and Rushmore demonstrate evidence of gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to its civil obligations to Mr. Payne and his family and punitive damages should be assessed by a jury against them.

## DEMAND FOR RELIEF

**WHEREFORE,** Darryl Beans demands that there be Judgment in his favor and against First Home and its agents, First Guaranty, Roundpoint, and Rushmore for all reasonable damages sustained by Darryl Beans, which includes but is not limited to:

A. Statutory damages;

B. Compensatory damages associated with the costs of out-of-pocket expenses;

C. Embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, aggravation;

D. Credit related damages;

E. Property equity losses;

F. Credit denials;

G. Actual and statutory damages under the WVCCPA;

H. Punitive damages, attorney fees, costs incurred, and court costs;

I. Other assessments proper by law and any and all other applicable federal and state laws;

**WHEREFORE,** Darryl Beans demands that he also be awarded legal interest from any monetary award thereon from the date of judicial demand until paid in full.

**WHEREFORE,** Darryl Beans demands trial by Jury.

12

<u>Darryl Beans</u>
By Counsel

<u>/s/ Stephen G. Skinner</u>
Stephen G. Skinner (W.Va. Bar No. 6725)
SKINNER LAW FIRM
P.O. Box 487
Charles Town, WV 25414
(304) 725-7029/Fax: (304) 725-4082
sskinner@skinnerfirm.com

E-FILED | 3/23/2023 9:10 AM
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner

**LOAN #: 4021166076**
**MIN: 1000915-0000082454-7**

# NOTE

| FHA Case No. |
|---|
| 571-1346270 703 |

February 19, 2016                    Leesburg,                         Virginia
**[Date]**                           **[City]**                        **[State]**

1398 Rolling Lane, Harpers Ferry, WV 25425
**[Property Address]**

### 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. **$118,131.00**          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **First Home Mortgage Corporation, a Corporation.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.875 %.**
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.  PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the **1st**        day of each month beginning on **April 1, 2016.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on **March 1, 2046,**          I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at **6355 Nottingham Drive, Suite 130**
**BALTIMORE, MD 21236**
or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. **$555.50.**

### 4.  BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5.  LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6.  BORROWER'S FAILURE TO PAY AS REQUIRED
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **16**          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of that portion of the installment that is overdue, but not more than U.S. **$30.00.**          I will pay this late charge promptly but only once on each late payment. **LATE CHARGE WILL NOT EXCEED $30.00.**

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**WEST VIRGINIA FIXED RATE NOTE** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      **Form 3249 1/01**
Modified for FHA                                                                            Initials: _____
Ellie Mae, Inc.                                                                            FHA3200WVNT  0815
                                            Page 1 of 2                                   FHA3200NOT (CLS)
                                                                                         02/18/2016 09:14 AM PST

Exhibit A

LOAN #: 4021166076

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses (except attorneys' fees) in enforcing this Note to the extent not prohibited by applicable law.

**7. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DARRYL WAYNE BEANS    2/19/16    DATE

Lender: First Home Mortgage Corporation
NMLS ID: 71603
Loan Originator: Meghan R McDonald
NMLS ID: 609841

[Sign Original Only]



Initials: _____

WEST VIRGINIA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3249 1/01
Modified for FHA
Ellie Mae, Inc.    Page 2 of 2    FHA3200WVNOT  0815
FHA3200NOT (CLS)
02/18/2016 09:14 AM PST

FILED 03/02/2016
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner

When recorded, return to:
**First Home Mortgage Corporation**
Attn: Post Closing Department
6355 Nottingham Drive, Suite 130
BALTIMORE, MD 21236

Escrow No.: WVL 16-01-006
LOAN #: 4021166076

[Space Above This Line For Recording Data]

## DEED OF TRUST

| FHA Case No. |
|---|
| 571-1345270 703 |

MIN: 1000915-0000082454-7
MERS PHONE #: 1-888-679-6377

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.
**(A) "Security Instrument"** means this document, which is dated  **February 19, 2016,**        together with all Riders to this document.
**(B) "Borrower" is  DARRYL WAYNE BEANS, SOLE OWNERSHIP.**

Borrower's mailing address is  **1398 Rolling Lane**
Harpers ferry, WV 25442.

Borrower is the trustor under this Security Instrument.
**(C) "Lender" is  First Home Mortgage Corporation.**

Lender is a **Corporation,**                                                    organized and existing
under the laws of **Maryland.**
Lender's address is **6355 Nottingham Drive, Suite 130, BALTIMORE, MD 21236.**

**(D) "Trustee" is  MARK SLOTNICK, ESQ..**

The Trustee resides at  **500 VIRGINIA STREET, SUITE 600, CHARLESTON, WV 25301, KANAWHA**

County, West Virginia.
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  **February 19, 2016.**        The Note states that Borrower owes Lender  **ONE HUNDRED EIGHTEEN THOUSAND ONE HUNDRED THIRTY ONE AND NO/100*** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$118,131.00**                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **March 1, 2046.**
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Planned Unit Development Rider
☐ Other(s) [specify]

**WEST VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3049 1/01 (rev. 6/15)**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                              Page 1 of 9                              Initials: _____
WVFHA15DE  1116
WVDEED (CLS)
02/18/2016 09:14 AM PST

Exhibit B

LOAN #: 4021166076

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M)** "**Escrow Items**" means those items that are described in Section 3.
**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R)** "**Secretary**" means the Secretary of the United States Department of Housing and Urban Development or his designee.
**(S)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower hereby irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY

[Type of Recording Jurisdiction]

of Jefferson
[Name of Recording Jurisdiction]:
Lot 11, Section 1-J, SHANNONDALE, as more particularly shown and described on the plat by W. R. Amos, Surveyor, dated November 1981 and recorded in Deed Book 262 at Page 385 in the Clerk's Office of the County Commission of Jefferson County, West Virginia. AND Lots 1 and 2, Section 3-J, SHANNONDALE, as more particularly shown and described on the plat by W. R. Amos, Surveyor, dated November 1982 and recorded in Deed Book 256 at Page 458 in the Clerk's Office of the County Commission of Jefferson County, West Virginia.
APN #:  23A 0213

which currently has the address of  1398 Rolling Lane, Harpers Ferry,
[Street] [City]

West Virginia  25425          ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

IN TRUST FOREVER to secure the payment of the Note which is payable to the order of Lender, the beneficial owner of said Note, at its principal office at the top of this Security Instrument, the residence of said beneficial owner, and to secure also any and all extensions, modifications and renewals of said Note, or any part thereof, however changed in form, manner or amount, and all other indebtedness of Borrower to Lender or Trustee hereunder.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

WEST VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3049 1/01 (rev. 8/15)
Modified for FHA 9/2014 (HUD Handbook 4000.1)                                    Initials: _____
Ellie Mae, Inc.                          **Page 2 of 9**                          WVEFHA15DE  1115
                                                                                 WVEDEED (CLS)
                                                                                 02/16/2016 09:14 AM PST



LOAN #: 4021166076

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower makes a payment or partial payment that is not sufficient to bring the Loan current, such funds, if not applied earlier, will be applied to the outstanding principal balance under the Note prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

With regard to the application of payments and the assessment and collection of late charges in this Section 2, Lender must comply with Applicable Law.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory

WEST VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3049 1/01 (rev. 8/16)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

Page 3 of 9

Initials: _____

WVEFHA16DE    1115
WVEDEED (CLS)
02/18/2016 09:14 AM PST

LOAN #: 4021166076

to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. If Borrower provides proof of insurance to Lender and that insurance meets Lender's requirements, then Lender will cancel the insurance that Lender purchased. Borrower may be entitled to a refund of unearned premiums. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest within 30 days after the date of the Notice of Placement of Insurance sent by Lender pursuant to W. Va. Code § 46A-3-109a(c).

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false,

WEST VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3049 1/01 (rev. 8/15)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                      Page 4 of 9                    Initials: _____

WVEFHA15DE  1115
WVEDEED (CLS)
02/16/2016 09:14 AM PST

LOAN #: 4021166076

misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

If permitted under Applicable Law, any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend,

WEST VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3049 1/01 (rev. 8/15)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                    Page 5 of 9

Initials: 

WVEFHA15DE  1115
WVEDEED (CLS)
02/18/2016 09:14 AM PST



**LOAN #: 4021166076**

modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge, as permitted by Applicable Law, Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses and fees, as permitted by Applicable Law, incurred in enforcing this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the

WEST VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3049 1/01 (rev. 6/16)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.    Page 6 of 9

Initials: _____

WVEFHA15DE    1115
WVEDEED (CLS)
02/18/2016 09:14 AM PST

**LOAN #: 4021166076**

Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn–St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials: 

LOAN #: 4021166076

**24. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property; and (e) such additional information as required by Applicable Law. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24 as permitted by Applicable Law.

If Lender invokes the power of sale, Lender or Trustee shall give Borrower, in the manner provided in Section 14, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Borrower hereby waives personal service of notice of any sale made hereunder, upon Borrower, its devisees, agents, successors or assigns, and also waives the posting of notice of sale at the courthouse. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee, or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's fees as permitted by Applicable Law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

In the event that foreclosure proceedings are instituted hereunder but are not completed, Trustee shall be reimbursed for all costs and expenses incurred by it in commencing such proceedings; and all costs and expenses so incurred by Trustee, together with interest thereon until paid at the Note default rate shall be and become a part of the obligations secured hereby and shall be collectible as such.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

**25. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**26. Beneficiary's Address.** The beneficial owner and holder of the Note at the time of execution and delivery hereof is Lender, whose residence address is stated on the first page of this Security Instrument.

**27. Notice of Trustee's Sale.** Any notice of other liens which may be given to Lender pursuant to W. Va. Code § 38-1-4, shall be effective upon the receipt of such notice, in writing, through the regular United States mail, postage prepaid, addressed to Lender at its address set forth above in the definition of Lender under DEFINITIONS.

A copy of any notice of Trustee's sale under this Security Instrument shall be served on Borrower by certified mail, return receipt requested, directed to Borrower at the address stated above or such other address given to Lender in writing by Borrower, subsequent to the execution and delivery of this Security Instrument.

**28. Trustees and Substitution of Trustees.** It is hereby expressly covenanted and agreed to all parties hereto that Lender may, at any time and from time to time hereafter, without notice, appoint and substitute another Trustee or Trustees, corporations or person, in place of the Trustee herein named to execute the trust herein created. Upon such appointment, either with or without a conveyance to said substituted Trustee or Trustees by the Trustees herein named, or by any substituted Trustee in case the said right of appointment is exercised more than once, the new and substituted Trustee or Trustees in each instance shall be vested with all the rights, titles, interests, powers, duties and trusts in the premises which are vested in and conferred upon the Trustees herein named; and such new and substituted Trustee or Trustees shall be considered the successors and assigns of the Trustees who are named herein within the meaning of this Security Instrument, and substituted in their place and stead. Each such appointment and substitution shall be evidenced by an instrument in writing which shall recite the parties to, and the book and page of record, of this Security Instrument, and the description of the real property herein described, which instrument, executed and acknowledged by Lender and recorded in the office of the Clerk of the County Commission of the County wherein the Property is situate, shall be conclusive proof of the proper substitution and appointment of such successor Trustee or Trustees, and notice of such proper substitution and appointment to all parties in interest.

The Trustees, or either of them or the survivor thereof, may act in the execution of this trust and in the event either of the Trustees shall act alone, the authority and power of the Trustee so acting shall be as full and complete as if the powers and authority granted to the Trustees herein jointly had been granted to such Trustee alone. Either or both of the Trustees are hereby authorized to act by agent or attorney in the execution of this trust, and it shall not be necessary for any Trustee to be present in person at any foreclosure sale.

**29. Waiver of Homestead Exemption.** Borrower hereby waives all right of homestead exemption in the Property.

**30. Lender's Purchase of Property Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required and described above, Lender may purchase insurance at Borrower's expense to protect its interest in Borrower's Property. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the Property. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by this Security Instrument. If Lender purchases insurance for the Property, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own. If Borrower provides proof of insurance to Lender and that insurance meets Lender's requirements, then Lender will cancel the insurance that Lender purchased. Borrower may be entitled to a refund of unearned premiums.

WEST VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3049 1/01 (rev. 8/15)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                   Page 8 of 9                          Initials: 
                                                                                        WVEFHA15DE  1115
                                                                                        WVEDEED (CLS)
                                                                                        02/18/2016 09:14 AM PST

LOAN #: 4021166076

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____    2/19/16    (Seal)
DARRYL WAYNE BEANS                                      DATE

State of __VIRGINIA__
County of __LOUDOUN__

The foregoing instrument was acknowledged before me this __FEBRUARY 19, 2016__ (date) by DARRYL WAYNE BEANS (person acknowledging).

My Commission Expires: __7/31/16; 10/31/16__

_____
Notary Public

(Seal)

Sean A. Everhart
COMMISSIONER FOR WEST VIRGINIA
29 W. Jubal Early Drive
Winchester, Virginia 22601
My Commission Expires: July 31, 2016

SEAN ALLEN EVERHART
NOTARY PUBLIC
NO. 238756
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 10-31-2016

Lender: First Home Mortgage Corporation
NMLS ID: 71603
Loan Originator: Meghan R McDonald
NMLS ID: 609841

THIS DOCUMENT WAS PREPARED BY:
CHRISTINE SADOWSKI
FIRST HOME MORTGAGE CORPORATION
5355 NOTTINGHAM DRIVE, SUITE 130
BALTIMORE, MD 21236
410-933-3100

WEST VIRGINIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3049 1/01 (rev. 8/15)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                           Page 9 of 9

Initials: _____

WVFHA15DE    1115
WVEDEED (CLS)
02/18/2016 09:14 AM PST

FILED 3/23/2023 10:04 AM
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner



# County Commission
## of Jefferson County, West Virginia

Jefferson County Sheriff's Tax Office • 110 N. George Street • • Charles Town, WV 25414
(304) 728-3220

Pay your taxes online 

## Jefferson County Real Property - Tax Year: 2022

Ticket Number: 0000000969
Account Number: 00006055
District: 02 - CHARLES TOWN DIST
More Info:  Details

| | |
|---|---|
| Owner Name: BEANS DARRYL WAYNE | Property: SEC 1J #11 SHANNONDALE |
| In Care of: | |
| Address: 1398 ROLLING LN | Map: 23A    Parcel: 0214 0000 0000 |
| HARPERS FERRY WV 25425 | Lot Size:    Acreage: |
| Lending Inst: | Book: 1251    Page: 630 |

| Tax Class: 2 | Homestead Exemption: | Back Tax: | Exoneration: | Prior Delinquents: ✓ | Special Disposition: |
|---|---|---|---|---|---|

**DUE:** First Half: 38.42 If paid by: 10/31/2022 Second Half: 37.18 If paid by: 03/01/2023 Total Due: 75.60 If paid by: 10/31/2022

### ASSESSMENT:

| Assessment | GROSS | NET | TAX (1/2 Year) |
|---|---|---|---|
| Land | 6200 | 6200 | |
| Building | 200 | 200 | |
| Total | 6400 | 6400 | 38.13 |

### PAYMENTS RECEIVED:

| | First Half | Second Half |
|---|---|---|
| Net | .00 | .00 |
| Discount | .00 | .00 |
| Interest | .00 | .00 |
| Total | .00 | .00 |
| Date | none paid | none paid |

Format for Printer

Exhibit C

Click here to begin a new search.



Software Systems, Inc.
23 South University Avenue
Morgantown, WV 26508

© Software Systems, Inc. All rights reserved

FILED 4/25/2023 10:54 AM
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner



# County Commission
## of Jefferson County, West-Virginia

Jefferson County Sheriff's Tax Office • 110 N. George Street • Charles Town, WV 25414
(304) 728-3220

Pay your taxes online 

### Jefferson County Real Property - Tax Year: 2022

**Ticket Number:** 0000000968  **Account Number:** 00006054
**District:** 02 - CHARLES TOWN DIST  **More Info:** Details

| | |
|---|---|
| Owner Name: BEANS DARRYL WAYNE | Property: SEC 3J #1,2 SHANNONDALE |
| In Care of: | |
| Address: 1398 ROLLING LN | Map: 23A  Parcel: 0213 0000 0000 |
| HARPERS FERRY WV 25425 | Lot Size:  Acreage: |
| Lending Inst: | Book: 1168  Page: 254 |

| Tax Class: 2 | Homestead Exemption: | Back Tax: | Exoneration: | Prior Delinquents: | Special Disposition: |
|---|---|---|---|---|---|

**DUE: First Half: none due Second Half: none due Total Due: none due**

## ASSESSMENT:

| Assessment | GROSS | NET | TAX (1/2 Year) |
|---|---|---|---|
| Land | 25900 | 25900 | |
| Building | 62300 | 62300 | |
| Total | 88200 | 88200 | 525.50 |

Format for Printer

## PAYMENTS RECEIVED:

| | First Half | Second Half |
|---|---|---|
| Net | 525.50 | 525.50 |
| Discount | 13.14 | 13.14 |
| Interest | .00 | .00 |
| Total | 512.36 | 512.36 |
| Date | 08/17/2022 | 02/13/2023 |

Exhibit D

Click here to begin a new search.



Software Systems, Inc.
23 South University Avenue
Morgantown, WV 26505

© Software Systems, Inc. All rights reserved

FILED  03/23/2023
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner

## IMPOUND ACCOUNT AUTHORIZATION

Borrower(s):  Darryl Wayne Beans

Date:  **February 19, 2016**

Loan Number:  **4021166076**

Property Address:  **1398 Rolling Lane, Harpers Ferry, WV 25425**

Lender:  **First Home Mortgage Corporation**

An impound account is an account established to ensure that required payments are made for certain items associated with a mortgage loan, such as taxes and insurance. Impounds will be required in the following circumstances:
- where required by state or federal regulatory authority; or
- where a loan is made, guaranteed or insured by a state or federal governmental lending agency; or
- where the original principal amount of such a loan exceeds 80% of the sales price or appraised value whichever is lower; or
- as required by lender as a condition of the loan.

If an impound account is established and the amounts paid to the Lender are insufficient to enable the Lender to make the required payments to the appropriate party when due, the Lender shall notify the Borrower as required by RESPA, and the Borrower shall pay to the Lender the amount necessary to make up the deficiency or shortage in accordance with RESPA, but in no more than 12 monthly payments. The payment for taxes and insurance may vary from year to year. The Lender will pay interest on impound accounts as required by law. The obligations of the Borrower and the Lender regarding impound accounts are set forth in the Deed of Trust or Mortgage securing the loan.

**PLEASE NOTE THAT ANY BORROWER WHO IS DELINQUENT IN THE PAYMENT OF THEIR REAL ESTATE TAXES, HAZARD AND/OR FLOOD INSURANCE PREMIUMS, MAY BE REQUIRED BY THE LENDER TO PAY IMPOUNDS.**

The following describes any impound account that is being established in connection with your loan:

☐ Yes   ☒ No   **IMPOUND ACCOUNT REQUESTED BY BORROWER**
The undersigned understand(s) that an impound account for the payment of real property taxes, hazard insurance and/or flood insurance premiums is NOT REQUIRED; however, the undersigned request(s) that such an account be established.

☒ Yes   ☐ No   **IMPOUND ACCOUNT REQUIRED BY LENDER**
The undersigned understand(s) that an impound account for the payment of property taxes, hazard insurance, and/or flood insurance or other related expenses is REQUIRED.

DARRYL WAYNE BEANS

2/19/16
DATE

Exhibit E

Ellie Mae, Inc.

GIAA  0809
GIAA (CLS)
02/18/2016 09:14 AM PST



ERLIN DELATORRE
PO BOX 123
INWOOD WV 25428-0123

ERLIN DELATORRE
P O BOX 123
INWOOD, WV 25428

CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner

TAX LIEN DEED
Book 1223 @ Page 303
Pages Recorded 43
Recording Cost $    88.00
Transfer Tax    $     2.20
Farm Land Tax   $     1.10

This deed made this 1st day of April, 2019, by and between G. Russell Rollyson Jr., appointee of the Honorable John B. McCuskey, State Auditor, grantor and ERLIN DELATORRE, purchaser, grantee, witnesseth, that:

Whereas, In pursuance of the statutes in such case made and provided, Pete H Dougherty, Sheriff of Jefferson County, did in the month of November, in the year 2017, sell the tax lien(s) on real estate, hereinafter mentioned and described, for taxes delinquent thereon for the year 2016, and ERLIN DELATORRE for the sum of $219.50, that being the amount of purchase money paid to the sheriff, did become the purchaser of the tax lien(s) on such real estate, which was returned delinquent in the name of BIGDEN PATRICIA W; and

Whereas, The State Auditor has caused the notice to redeem to be served on all persons required by law to be served on all persons required by law to be served therewith; and

Whereas, The tax lien(s) on the real estate so purchased has not been redeemed in the manner provided by law and the time for redemption set in such notice has expired;

Now, therefore, the grantor, for and in consideration of the premises and in pursuance of the statutes, doth grant unto ERLIN DELATORRE , grantee, his or her heirs and assigns forever, the real estate on which the tax lien(s) so purchased existed, situate in the county of Jefferson, bounded and described as follows:

The undersigned hereby declares that the consideration paid for the conveyance is $219.50.

Certificate of Sale Number: 2017-S-0000000145
SEC 1J #11 SHANNONDALE, CHARLES TOWN DISTRICT

Witness the following signature:

*G. Russell Rollyson*

_____
G. Russell Rollyson Jr.
Appointee of the Honorable John B. McCuskey, State Auditor

State of West Virginia
County of Kanawha, to wit:

I, Regina Arthur, a Notary Public in and for the County of Kanawha, and the State of West Virginia, do certify that G. Russell Rollyson Jr., Appointee of the Honorable John B. McCuskey, State Auditor, whose name is signed to the foregoing writing bearing the date of the 1st day of April, 2019, has acknowledge the same before me in said County.

Given under my hand this 1st day of April, 2019. My commission expires February 25, 2024.

*Regina Arthur*

OFFICIAL SEAL
NOTARY PUBLIC, STATE OF WEST VIRGINIA
Regina Arthur
WV State Auditor's Office - County Collections Division
1900 Kanawha Blvd., East, Charleston, WV 25305
My Commission Expires February 25, 2024

Regina Arthur
Notary Public

Exhibit F

This instrument was prepared from a form by G. Russell Rollyson Jr., Appointee of the Honorable John B. McCuskey, State Auditor, as provided for in Chapter 11A, Article 3, Section 27 of the Code of West Virginia.

E-FILED | 2023-03-01 10:14 AM
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner



March 29, 2022

Stephen G. Skinner
115 East Washington Street
P.O. Box 487
Charles Town, WV 25414

Loan:        1002781563
Property:    1398 Rolling Lane, Harpers Ferry, WV 25425

*Delivered via email to sskinner@skinnerfirm.com*

Dear Stephen Skinner,

We are responding to your letter dated March 15, 2022, which we received on March 21, 2022. Your letter indicates RoundPoint did not pay property taxes on your client's lot, which resulted in the lot being sold in a tax sale. You request we correct the account.

**What's Important to Know**

Unfortunately, RoundPoint is unable to make changes or updates to the account, as the loan was transferred to Rushmore Loan Management Services LLC on May 2, 2018. Please contact the current servicer of the mortgage account in order to request corrections.

**Further Details**

Our research of the account indicates, RoundPoint does not have record of non-payment of the property taxes, as all payments were submitted for the parcel number on file, 02023A021300000000.

Our review indicates there has been no error by RoundPoint in the servicing of the mortgage loan. Federal law provides the right to request documents we relied upon in reaching this determination. For convenience, the relevant documentation is enclosed with this response.

**How to Contact Us**

RoundPoint is here to help. If there is anything else we can do for you, please contact us at 877-426-8805. Our offices are open Monday through Friday from 8:00 a.m. until 9:00 p.m. Eastern Time and Saturday from 10:00 a.m. until 3:00 p.m. Eastern Time.

**Enclosure**

- Escrow Disbursement Amounts

Sincerely,

Katie Needham
Vice President
RoundPoint Mortgage Servicing Corporation

KLN/CNL





# Important Disclosures

**Notice to Customers:** RoundPoint Mortgage Servicing Corporation may report information about your mortgage account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Federal law requires us to advise you that RoundPoint Mortgage Servicing Corporation (NMLS ID # 18188) is a debt collector and that this is an attempt to collect a debt. Any information obtained may be used for that purpose. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy proceeding, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect indebtedness as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.

Confirmed successors in interest to borrowers named on the Note are not liable for repayment of the debt of the original named borrower unless and until the successor assumes the loan obligation pursuant to applicable law.

**FOR ARKANSAS RESIDENTS:** Please be advised that RoundPoint Mortgage Servicing Corporation is licensed with the Securities Department for the State of Arkansas. Borrowers may file complaints about RoundPoint Mortgage Servicing Corporation with the Arkansas Securities Department. Borrowers may also obtain further information from the Arkansas Securities Department by calling (501) 324-9260 or by visiting the Department's website at www.securities.arkansas.gov.

**FOR COLORADO RESIDENTS:** RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1. The address for the in-state office is 7800 East Dorado Place, Suite 270, Englewood, CO 80111 and the telephone number is 720-907-0474.

**FOR HAWAII RESIDENTS:** RoundPoint is licensed as a Mortgage Servicer by the Commissioner of Financial Institutions of Hawaii, and complaints may be submitted to the Commissioner

**FOR NEW YORK RESIDENTS:** Please be advised that RoundPoint Mortgage Servicing Corporation is registered with the Superintendent of Financial Services for the State of New York. Borrowers may file complaints about RoundPoint Mortgage Servicing Corporation with the New York State Department of Financial Services. Borrowers may also obtain further information from the New York State Department by calling the Department's Consumer Assistance Unit at 800-342-3736 or by visiting the Department's website at www.dfs.ny.gov. A list of non-profit housing counselors can be found at http://www.dfs.ny.gov/consumer/mortg_nys_np_counseling_agencies.htm.

**FOR NORTH CAROLINA RESIDENTS:** Please be advised that RoundPoint Mortgage Servicing Corporation is licensed by the North Carolina Commissioner of Banks. North Carolina Collection Agency permit no. 102965. Any complaints related to RoundPoint Mortgage Servicing Corporation may be submitted to the North Carolina Commissioner of Banks at 4309 Mail Service Center, Raleigh, NC 27699-4309, by phone at 1-888-384-3811, or through the Commissioner's website at http://www.nccob.org/public/ConsumerInformation.Complaints/CIFileComplaint.aspx

RoundPoint Mortgage Servicing Corporation is physically located at 446 Wrenplace Road, Fort Mill, SC 29715.

**FOR OREGON RESIDENTS:** Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at 877-426-8805 or servicinghelp@roundpointmortgage.com. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**FOR TEXAS RESIDENTS:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

| Escrow Disb Amount | Escrow Disb Transaction Date | Transaction Description | Payee Description | Previous Day Ending Escrow Advance Balance | Previous Day Ending Escrow Balance | Previous Day Ending First Principal Balance |
|---|---|---|---|---|---|---|
| ($76.77) | 04/04/16 | MIP/PMI disbursement | Fha | $0.00 | $484.86 | $117,956.96 |
| ($76.77) | 05/03/16 | MIP/PMI disbursement | Fha | $0.00 | $408.09 | $117,956.96 |
| ($76.77) | 06/03/16 | MIP/PMI disbursement | Fha | $0.00 | $569.71 | $117,782.36 |
| ($76.77) | 07/05/16 | MIP/PMI disbursement | Fha | $0.00 | $731.33 | $117,607.20 |
| ($76.77) | 08/03/16 | MIP/PMI disbursement | Fha | $0.00 | $892.95 | $117,431.47 |
| ($798.34) | 08/09/16 | County Tax Disbursement | Jefferson County Sheriff | $0.00 | $94.61 | $117,431.47 |
| ($76.77) | 09/02/16 | MIP/PMI disbursement | Fha | $0.00 | $256.23 | $117,255.18 |
| ($76.77) | 10/04/16 | MIP/PMI disbursement | Fha | $0.00 | $417.85 | $117,078.32 |
| ($76.77) | 11/03/16 | MIP/PMI disbursement | Fha | $0.00 | $579.47 | $116,900.89 |
| ($76.77) | 12/02/16 | MIP/PMI disbursement | Fha | $0.00 | $741.09 | $116,722.88 |
| ($76.77) | 01/04/17 | MIP/PMI disbursement | Fha | $0.00 | $902.71 | $116,544.30 |
| ($1,129.23) | 02/01/17 | Hazard insurance disbursement | X12-Nationwide | $0.00 | $11.87 | $116,365.14 |
| ($76.77) | 02/03/17 | MIP/PMI disbursement | Fha | $64.90 | $0.00 | $116,365.14 |
| $64.90 | 02/03/17 | Escrow advance | | $64.90 | $0.00 | $116,365.14 |
| ($798.34) | 02/07/17 | County Tax Disbursement | Jefferson County Sheriff | $863.24 | $0.00 | $116,365.14 |
| $798.34 | 02/07/17 | Escrow advance | | $863.24 | $0.00 | $116,185.40 |
| ($238.39) | 02/16/17 | Escrow advance recovery | | $624.85 | $0.00 | $116,185.40 |
| ($76.77) | 03/03/17 | MIP/PMI disbursement | Fha | $701.62 | $0.00 | $116,185.40 |
| $76.77 | 03/03/17 | Escrow advance | | $701.62 | $0.00 | $116,005.08 |
| ($238.39) | 03/16/17 | Escrow advance recovery | | $463.23 | $0.00 | $116,005.08 |
| ($75.35) | 04/04/17 | MIP/PMI disbursement | Fha | $538.58 | $0.00 | $116,005.08 |
| $75.35 | 04/04/17 | Escrow advance | | $538.58 | $0.00 | $115,824.18 |
| ($238.39) | 04/27/17 | Escrow advance recovery | | $300.19 | $0.00 | $115,824.18 |
| ($75.35) | 05/03/17 | MIP/PMI disbursement | Fha | $375.54 | $0.00 | $115,824.18 |
| $75.35 | 05/03/17 | Escrow advance | | $375.54 | $0.00 | $115,642.70 |
| ($238.39) | 05/25/17 | Escrow advance recovery | | $137.15 | $0.00 | $115,642.70 |
| ($75.35) | 06/02/17 | MIP/PMI disbursement | Fha | $212.50 | $0.00 | $115,642.70 |
| $75.35 | 06/02/17 | Escrow advance | | $212.50 | $0.00 | $115,460.63 |
| ($212.50) | 06/26/17 | Escrow advance recovery | | $0.00 | $196.09 | $115,460.63 |
| ($75.35) | 07/05/17 | MIP/PMI disbursement | Fha | $0.00 | $120.74 | $115,460.63 |
| ($75.35) | 08/03/17 | MIP/PMI disbursement | Fha | $0.00 | $453.98 | $115,277.97 |
| ($403.70) | 08/17/17 | County Tax Disbursement | Jefferson County Sheriff | $0.00 | $50.28 | $115,277.97 |
| ($75.35) | 09/05/17 | MIP/PMI disbursement | Fha | $0.00 | $383.52 | $115,094.72 |
| ($75.35) | 10/03/17 | MIP/PMI disbursement | Fha | $0.00 | $716.76 | $114,910.88 |
| ($75.35) | 11/03/17 | MIP/PMI disbursement | Fha | $0.00 | $1,050.00 | $114,726.45 |
| ($75.35) | 12/04/17 | MIP/PMI disbursement | Fha | $0.00 | $1,383.24 | $114,541.42 |
| ($75.35) | 01/03/18 | MIP/PMI disbursement | Fha | $0.00 | $1,716.48 | $114,355.79 |

| | | | | | | |
|---|---|---|---|---|---|---|
| ($774.41) | 01/25/18 | Escrow disbursed to Mortgagor | | $0.00 | $942.07 | $114,355.79 |
| ($75.35) | 02/02/18 | MIP/PMI disbursement | | $0.00 | $1,275.31 | $114,169.56 |
| ($403.70) | 02/06/18 | County Tax Disbursement | Jefferson County Sheriff | $0.00 | $871.61 | $114,169.56 |
| ($1,156.16) | 02/20/18 | Hazard insurance disbursement | Nationwide Mutual Fire | $284.55 | $0.00 | $114,169.56 |
| $284.55 | 02/20/18 | Escrow advance | | $284.55 | $0.00 | $114,169.56 |
| ($284.55) | 02/28/18 | Escrow advance recovery | | $0.00 | $124.04 | $113,982.73 |
| ($75.35) | 03/02/18 | MIP/PMI disbursement | Fha | $0.00 | $48.69 | $113,982.73 |
| ($73.87) | 04/03/18 | MIP/PMI disbursement | Fha | $0.00 | $383.41 | $113,795.30 |
| ($73.87) | 05/01/18 | MIP/PMI disbursement | Fha | $0.00 | $546.27 | $113,607.26 |

FILED 3/28/2023 10:16 AM
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner



15480 Laguna Canyon Road
Suite 100
Irvine, CA 92618
888.699.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

February 24, 2022

Stephen G. Skinner
Skinner Law Firm
115 East Washington Street #487
Charles Town, WV 25414

**RECEIVED**

FEB 2 8 2022

············

RE:   Mortgagor – Darryl Wayne Beans
      Property Address – 1398 Rolling Lane, Harpers Ferry, WV 25425
      Loan Number – 4400562064

Dear Stephen G. Skinner:

Rushmore Loan Management Services LLC ("Rushmore") is responding to the correspondences dated January 28, 2022, and received by our office on February 2, 2022, and February 7, 2022, regarding the mortgage loan account referenced above loan. We appreciate the opportunity to provide you with this written response.

Our records indicate that Rushmore Loan Management Services LLC has updated its system of record and added the following third-party authorization:

Skinner Law Firm
115 East Washington Street #487
Charles Town, WV 25414

Rushmore services loans in accordance with the terms and conditions found in the mortgage note and all applicable state and federal laws and regulations.  The servicing responsibilities transferred from RoundPoint Mortgage Servicing Corporation to Rushmore effective May 2, 2018. At the time of servicing transfer, the prior servicer reported only one tax parcel (Parcel 02023A021300000000), payable to Jefferson County.  For this parcel, Rushmore has made the following disbursements indicated in the below chart.

| Loan Number | Transaction Date | Transaction Code Description | Transaction Amount | Disbursement Date | Transaction Code Type |
|---|---|---|---|---|---|
| 4400562064 | 8/17/2017 | Tax Due Date 9/1/17 | -$403.70 | 8/1/2017 | Disbursement |
| 4400562064 | 2/6/2018 | Tax Due Date 3/1/18 | -$403.70 | 2/1/2018 | Disbursement |
| 4400562064 | 8/3/2018 | Tax Due Date 9/1/18 | -$422.10 | 8/1/2018 | Disbursement |
| 4400562064 | 2/4/2019 | Tax Due Date 3/1/19 | -$422.10 | 2/1/2019 | Disbursement |
| 4400562064 | 8/5/2019 | Refunded on line 8 | -$58.23 | 8/1/2019 | Disbursement |

Rushmore Loan Management Services is a debt collector, who is attempting to collect a debt.  Any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation. If you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information purposes only and does not constitute personal liability with respect to the debt.

Exhibit H





15480 Laguna Canyon Road
Suite 100
Irvine, CA 92618
888.699.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

| 4400562064 | 8/6/2019 | Tax Due Date 9/1/19 | -$469.21 | 8/1/2019 | Disbursement |
| 4400562064 | 9/5/2019 | Tax Refund Deposit | $58.23 | 10/1/2019 | Deposit |
| 4400562064 | 2/4/2020 | Tax Due Date 3/1/20 | -$469.21 | 2/1/2020 | Disbursement |
| 4400562064 | 8/3/2020 | Tax Due Date 8/1/20 | -$454.36 | 8/1/2020 | Disbursement |
| 4400562064 | 2/1/2021 | Tax Due Date 3/1/21 | -$454.36 | 2/1/2021 | Disbursement |
| 4400562064 | 8/9/2021 | Tax Due Date 9/1/21 | -$484.95 | 8/1/2021 | Disbursement |

Research has determined that the second parcel (Parcel 02023A021400000000) was sold via a tax sale effective November 14, 2017, due to delinquent 2016 county taxes. Rushmore was not aware of the second parcel as the tax sale occurred prior to the transfer of servicing. The last day to redeem was March 31, 2019. Rushmore came to know of the second parcel after the expiration of the redemption period. We contacted the State Land Commissioner's Office and confirmed that the Deed had been transferred to an individual purchaser.

Please note that, as a consumer, you have the right to request the documents relied upon by Rushmore in reaching its determination of whether an error occurred. We have enclosed those documents for your records. Effective February 2, 2022, the servicing responsibilities transferred from Rushmore to Carrington Mortgage Services, LLC. The toll-free number for the new servicer is 800-561-4567. If you have any questions related to the transfer of servicing to Carrington Mortgage Services, LLC, call Carrington Mortgage Services, LLC Customer Service Department at 800-561-4567.

Should you have any additional questions, please do not hesitate to contact us.

Loss Mitigation Department
Monday through Friday, 8:00 a.m. to 6:00 p.m. Central Standard Time
Toll-free number: 1.888.504.6700

Sincerely,

Customer Correspondence Department
Rushmore Loan Management Services LLC

Enclosure (1)

By Federal Express

Rushmore Loan Management Services is a debt collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation. If you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information purposes only and does not constitute personal liability with respect to the debt.





**P.O. Box 55004**
**Irvine, CA 92619-2708**
**888.699.5600 toll free**
**949.341.0777 local**
**949.341.2200 fax**

January 10, 2022

DARRYL WAYNE BEANS
1398 ROLLING LN
HARPERS FERRY, WV  25425

**Your Rushmore Loan Number:** 4400562064
**Property Address:** 1398 ROLLING LANE
HARPERS FERRY, WV  25425

Dear Borrower(s),

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, has been assigned, sold or transferred from Rushmore Loan Management Services LLC (Rushmore) to Carrington Mortgage Services, LLC effective February 02, 2022. The transfer of the servicing of your mortgage does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your current servicer send you a notice at least 15 days before the effective date of transfer. Your new servicer must also send you a notice no later than 15 days after this effective date.

If you have any questions regarding the transfer of servicing from your current servicer, please contact our Customer Care Department.

**Rushmore Correspondence:**
Rushmore Loan Management Services LLC
15480 Laguna Canyon Road, Suite 100
Irvine, CA 92618

**Rushmore Customer Care:**
Toll Free 1-888-504-6700
6:00 a.m. - 7:00 p.m. (PST) Monday - Thursday
6:00 a.m. - 6 p.m. (PST) Friday

Carrington Mortgage Services, LLC will be your new servicer. The business addresses for your new servicer are as follows:

**New Servicer Payment Address:**
Carrington Mortgage Services, LLC
PO Box 660586
Dallas, TX 75266-0586

**New Servicer Correspondence:**
Carrington Mortgage Services, LLC
PO Box 5001
Westfield , IN 46074

The toll free number for your new servicer is 800-561-4567. If you have any questions related to the transfer of servicing to Carrington Mortgage Services, LLC, call Carrington Mortgage Services, LLC Customer Service Department at 800-561-4567 Monday - Friday 8:00 am to 8:00 pm EST. Please have your loan number available when calling.

The date that Rushmore will stop accepting payments from you is February 01, 2022. If your payments are being automatically drafted from your checking or savings account, this service will be discontinued. Please contact Carrington Mortgage Services, LLC to enroll in their automatic payment service. The date that Carrington Mortgage Services, LLC will begin accepting payments from you is February 02, 2022. Send all payments due on or after that due date to your new servicer. Payments sent to Rushmore after the dates provided in this letter will be forwarded to your new servicer, but only for the first 60 days following the date of the servicing transfer. A billing statement will be mailed to you within 15 to 30 days.

If you are currently making your mortgage payment through a third party entity (e.g., government allotment, biweekly, or bill service), please take the necessary steps to advise them of your new loan number and change the payee to your new servicer. In the event of a payment change, it is your responsibility to notify the third party of the new payment amount. You should also be aware of the following information which is referred to in more details in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605).

During the 60 day period following the effective date of transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new servicer as late and a late charge fee may not be assessed.

Section 6 of (RESPA) (12 USC 2605) gives you certain rights. If you send a qualified written request to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 5 Business Days of receipt of your request. A 'qualified written request' is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number and your reasons for the request. If you want to send a 'qualified written request' regarding the servicing of your loan, it must be sent to this address:

Rushmore Loan Management Services LLC
P.O. Box 52262
Irvine, California 92619

All written requests for specific information will be handled within 30 business days of receipt. We will determine whether an error occurred within 30 business days after receiving your notice of error and will correct any error promptly (Notices of error on payoff statements will be handled within 7 days). If additional time is needed to investigate your request, we may take up to 45 business days, but we will notify you of the extension within the original 30 business days. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

During the 60 business day period from the date your complaint is received, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage document.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section. You should seek legal advice if you believe your rights have been violated.

Sincerely,
Rushmore Loan Management Services LLC

CARB010222
SR001

## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

If you have any other mortgage loans secured by the same property not serviced by Rushmore, please contact your other servicer directly to discuss any possible loss mitigation options that may be available to you.

If you are a confirmed Successor-In-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information purposes only and does not constitute personal liability with respect to the debt.

**LEGAL NOTIFICATION:** Rushmore Loan Management Services LLC may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

**Notice of Error Resolution  Information Request Procedures**

The following outlines the Error Resolution and Information Request Procedures for your mortgage account at Rushmore Loan Management Services LLC (RLMS). Please keep this document for your records.

**If you think an error has occurred on your mortgage account or if you need specific information about the servicing of your loan, please write us at:**

**Rushmore Loan Management Services**
**PO BOX 52262**
**Irvine, California 92619-2262**

All written requests for information or notices of error should contain the following information:

1. Your name
2. Account number
3. Property Address
4. Description of the error and explanation as to why you believe it is an error or a request for specific information regarding the servicing of your loan
5. Current contact information so we may follow up with you

All written requests for specific information will be handled within 30 days of receipt. We will determine whether an error occurred within 30 days after receiving your notice of error and will correct any error promptly (Notices of error on payoff statements will be handled within 7 days). If additional time is needed to investigate your complaint or request, we may take up to 45 days but we will notify you of the extension within the original 30 days. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**HUD STATEMENT**

Pursuant to section 169 of the Housing and Community Development Act of 1987, you may have the opportunity to receive counseling from various local agencies regarding the retention of your home. You may obtain a list of the HUD approved housing counseling agencies by calling the HUD nationwide toll free telephone at 1-800-569-4287.

**Equal Credit Opportunity Act Disclosure**

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right  under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20552.

E-FILED | 2023/03/29 10:04 AM
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

**DARRYL BEANS,**

     **Plaintiff,**

**v.**                              **Civil Action No. _____**

**FIRST HOME MORTGAGE CORPORATION, FIRST GUARANTY
MORTGAGE CORPORATION, ROUNDPOINT MORTGAGE
SERVICING CORPORATION, and
RUSHMORE LOAN MANAGEMENT SERVICES, LLC,**

     **Defendants.**

## PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS TO FIRST GUARANTY MORTGAGE CORPORATION

Pursuant to the West Virginia Rules of Civil Procedure for trial courts of record, you are required to answer or respond or admit or deny the following interrogatories, requests for production, and requests for admission, separately and fully, in writing and under oath and to serve your answers upon the undersigned within **forty-five (45)** days of service upon you.

### DEFINITIONS

(a)    These Interrogatories are continuing in character with regard to all information in your possession or that of your attorney so as to require you or your attorney to file supplementary answers if you obtain further or different information before trial.

(b)    The term "documents" includes, but is not limited to, all paper material of any kind, whether written, typed, printed, punched, filmed or marked in any way; recording tapes or wires; any form of magnetic data, whether stored on disc, drum, core or in any other matter; film, photographs, movies, or any graphic matter, however, produced or reproduced; and all mechanical or electronic sound recording or transcripts thereof; and every other device or medium in which or through which information of any type is transmitted, recorded, or

preserved. The copies of such documents must be clear and legible, and must include the entire document; that is, all the pages, amendments, addenda, and attachments.

(c) "Yours" and "you" refer to the person to whom the Interrogatories are addressed, and all its predecessors or successors as well as its agents, employees, servants, representatives, subrogors, subrogees, and its attorneys, and all other persons acting or purporting to act in its behalf or at its direction.

(d) The term "person" includes a corporation, partnership, or other business association; any trade or industry association; a natural person; any government or governmental body, commission, board, or agency; or any other entity.

(e) "Identify" or "identification" when used in reference to a natural person means to state his or her full name, present address, home, and business telephone numbers, and his or her present position and business affiliation. When used in reference to a person other than a natural person, "identify" or "identification" means to state whether such a person is a corporation, partnership, or other organization, and its name, present and last known address, telephone number, and principal place of business. Once any person has been identified properly, it shall be sufficient thereafter when identifying that same person to state his or her name only.

(f) "Identify" or "identification" when used in reference to a document means to state the date, the author (or, if different, the signer or signers), the addresses, type of document (e.g., letter, memoranda, telegram, chart, photograph, x-ray, sound tape, computer program, etc.) If any such document was, but is no longer in Crossclaim Defendant's possession or subject to Crossclaim Defendant's control, state what disposition was made of it and the reason for such disposition. In lieu of identifying any document, a true and correct copy thereof may be annexed to and incorporated in the Answers to these Interrogatories. Whenever a document or documents

are annexed to and incorporated in the Answers to Interrogatories, they must be clear and legible copies and must include the entire document; that is, all the pages and amendments, addenda, and attachments thereto.

(g) "Lender" shall mean Defendant First Home Mortgage Corporation ("First Home").

(h) "Servicer" shall mean Defendant First Guaranty Mortgage Corporation ("First Guaranty"), Defendant Roundpoint Mortgage Servicing Corporation ("Roundpoint"), and Defendant Rushmore Loan Management Services, LLC ("Rushmore").

(i) Where knowledge or information of, or possession or control by a party is requested or inquired of, such request or inquiry includes knowledge, information, possession, or control of or by the party's agent, servants, employees, representatives, and his attorneys.

(j) If you contend that one or more parts of an Interrogatory are objectionable, answer each portion of the Interrogatory that you do not contend is objectionable.

(k) If you claim privilege with respect to any information requested, specify the privilege claimed, the statute, the rule or decision giving rise to that privilege, and give a brief description of the nature of the information or document being withheld, including the author, recipient, and person to whom the information or document has been furnished previously.

(l) In producing the documents requested herein, indicate the specific requests in response to which each document or group of documents is being produced. Attach clearly legible copies to your response hereto, or produce such requested documents and things for inspection and copying at the law offices of the undersigned at 115 E. Washington Street, P.O. Box 487, Charles Town, WV 25414.

## OBJECTIONS BASED ON PRIVILEGE

For each document withheld under a claim of privilege or exemption, provide (i) a general description of the document, (ii) its author, (iii) the date of its preparation, and (iv) the present location of the document.

## INTERROGATORIES

1. Please state the date and the reason that the date on which you became aware Plaintiff's mortgage loan account required an escrow account for property taxes.

**ANSWER:**

2. Please describe in detail every communication between you and the Plaintiff. In response to this interrogatory, for each such communication, please state the name and job title of the person communicating with Plaintiff, the means of communication (e.g., letter, phone, email), the date on which said communication occurred, and a summary of the communication.

**ANSWER:**

3. Do you have any insurance policy that may cover the acts/omissions alleged in the Plaintiff's complaint, including any policy for which coverage has been denied? If so, please produce a copy of the declaration page for each such policy; if coverage has been denied by any insurance company, please provide the denial of coverage letter from the insurance company.

**ANSWER:**

4. Please identify all your individual employees or agents who may have knowledge of the facts of this case and provide each individual's contact information and the facts of which they have knowledge.

**ANSWER:**

5. Please identify each individual that you plan to use as an expert in this litigation, the

topics about which the expert may testify, the expert's qualifications, and what the expert consulted in reaching his/her conclusions.

**ANSWER:**

6. Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure your loan servicing and escrow account management complies with any statutory or regulatory consumer protection requirements., including, but not limited to, the West Virginia Consumer Credit and Protection Act (see Count VI and VII of the Complaint), the Fair Debt Collection Practices Act (see Count VIII of the Complaint), and the Real Estate Settlement Procedures Act (Count IX of the Complaint).

**ANSWER:**

7. Please list and describe all policies or procedures you have had in place from January 1, 2015, to ensure that escrow items, particularly property taxes, are paid in a timely fashion.

**ANSWER:**

8. Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure escrow accounts are correctly billed and are not overbilled.

**ANSWER:**

9. Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure that accounts are refunded or credited when overbilled.

**ANSWER:**

10. Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure the accurate calculation of real estate taxes owed by each account.

**ANSWER:**

11. Please list and describe all policies and procedures you have had in place from January 1,

2015, to present that describe in detail your practices and procedures for ensuring that the escrow accounts you manage are accurately maintained.

**ANSWER:**

12. Please list and describe all policies and procedures you have had in place from January 1, 2015, to ensure that property taxes are paid on multi-parcel mortgages.

**ANSWER:**

13. Did/do you have a written agreement with the Lender or Servicer, which would govern any party's conduct in relation to billing, charging, or refunding money? If so, please identify and describe each responsive agreement, including the title, date, and substance of the agreement, and produce a copy of said agreement.

**ANSWER:**

14. Please identify each person who handled or in any way dealt with your attempts to bill or collect money from the Plaintiff's account.

**ANSWER:**

15. Please identify each person or mortgage account in West Virginia for whom or for which your payment for an escrow item from an escrow account more than thirty days after the escrow item payment was due since January 1, 2015.

**ANSWER:**

16. Please identify each person or employee who handled or in any way dealt with such documents discussed in Interrogatory #11.

**ANSWER:**

## REQUESTS FOR PRODUCTION

1. Please produce copies of all contracts or documents evidencing any agreements between

the Plaintiff and you.

2.  Please produce copies of records of all contact with Plaintiff.

3.  Please produce copies of records of billing and communications regarding the billing of the Plaintiff's mortgage and/or escrow account.

4.  Please produce copies of your policies for billing mortgage accounts applicable during the last ten years.

5.  Please produce copies of any exhibits you may offer at the trial of this matter.

6.  Please produce copies of any other writings or documents in your control related to or in any way relevant to the subject matter of this action.

7.  Provide copies of all notes, memoranda, diaries, messages, and/or correspondence between the you, the Lender or Servicers, and any other person regarding the Plaintiff or the Plaintiff's account.

8.  To the extent not included in the response to requires for production #7, please produce copies of records of all other communication regarding the Plaintiff or the Plaintiff's account, including but not limited to internal communications within your organization, including but not limited to memoranda, emails, facsimiles, log entries, and notes.

9.  Please produce all documents in your possession that contain anywhere on the document (1) Darryl Beans' name; (2) Darryl Beans' account number(s); or (3) Darryl Beans' mailing address.

10. Please produce copies of any civil or criminal complaints involving the same general context or subject matter as the transaction that is the subject matter of this action pending against you in West Virginia in the last three years.

11. Please produce copies of all expert reports prepared for this litigation, including the

expert's qualifications and the basis of the expert's opinion, as well as copies of any documents consulted by the expert in preparing the report.

12. Please produce copies of all guidelines, policies, procedures, or documents relating to billing, overbilling, and crediting of accounts that were in place during any period from 2015 to the present.

13. Please produce copies of all guidelines, policies, procedures, or documents relating to servicing of accounts, including escrow accounts, that were in place during any period from 2015 to the present.

14. Please produce copies of all guidelines, policies, procedures, or documents relating to accurate real estate tax calculations, that were in place during any period from 2015 to the present.

15. Please produce copies of all employee training materials regarding account servicing and quality assurance used during any period from 2015 to present.

16. Please produce copies of all guidelines, policies, procedures, or documents relating to servicing multi-parcel mortgages.

17. Please produce copies of the complete file on the Plaintiff and real estate owned by the Plaintiff.

18. Please produce all copies of all policies and procedures in place from the date of origination of Plaintiff's file to the present relating to quality assurance and prevention of error in the billing of consumer accounts.

19. Please provide a detailed accounting of all the Plaintiff's accounts, including escrow accounts linked to their mortgage account(s).

**<u>DARRYL BEANS</u>**
By Counsel

/s/ Stephen G. Skinner
Stephen G. Skinner
WVSB ID: 6725
SKINNER LAW FIRM
PO BOX 487
Charles Town, WV 25414
304-725-7029
sskinner@skinnerfirm.com

E-FILED | 4/23/2023 10:14 AM
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

DARRYL BEANS,

      **Plaintiff,**

v.                                           **Civil Action No. _____**

**FIRST HOME MORTGAGE CORPORATION, FIRST GUARANTY
MORTGAGE CORPORATION, ROUNDPOINT MORTGAGE
SERVICING CORPORATION, and
RUSHMORE LOAN MANAGEMENT SERVICES, LLC,**

      **Defendants.**

## PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS TO ROUNDPOINT MORTGAGE SERVICING CORPORATION

Pursuant to the West Virginia Rules of Civil Procedure for trial courts of record, you are required to answer or respond or admit or deny the following interrogatories, requests for production, and requests for admission, separately and fully, in writing and under oath and to serve your answers upon the undersigned within **forty-five (45)** days of service upon you.

## DEFINITIONS

(a)    These Interrogatories are continuing in character with regard to all information in your possession or that of your attorney so as to require you or your attorney to file supplementary answers if you obtain further or different information before trial.

(b)    The term "documents" includes, but is not limited to, all paper material of any kind, whether written, typed, printed, punched, filmed or marked in any way; recording tapes or wires; any form of magnetic data, whether stored on disc, drum, core or in any other matter; film, photographs, movies, or any graphic matter, however, produced or reproduced; and all mechanical or electronic sound recording or transcripts thereof; and every other device or medium in which or through which information of any type is transmitted, recorded, or

preserved. The copies of such documents must be clear and legible, and must include the entire document; that is, all the pages, amendments, addenda, and attachments.

(c) "Yours" and "you" refer to the person to whom the Interrogatories are addressed, and all its predecessors or successors as well as its agents, employees, servants, representatives, subrogors, subrogees, and its attorneys, and all other persons acting or purporting to act in its behalf or at its direction.

(d)   The term "person" includes a corporation, partnership, or other business association; any trade or industry association; a natural person; any government or governmental body, commission, board, or agency; or any other entity.

(e)    "Identify" or "identification" when used in reference to a natural person means to state his or her full name, present address, home, and business telephone numbers, and his or her present position and business affiliation. When used in reference to a person other than a natural person, "identify" or "identification" means to state whether such a person is a corporation, partnership, or other organization, and its name, present and last known address, telephone number, and principal place of business. Once any person has been identified properly, it shall be sufficient thereafter when identifying that same person to state his or her name only.

(f) "Identify" or "identification" when used in reference to a document means to state the date, the author (or, if different, the signer or signers), the addresses, type of document (e.g., letter, memoranda, telegram, chart, photograph, x-ray, sound tape, computer program, etc.) If any such document was, but is no longer in Crossclaim Defendant's possession or subject to Crossclaim Defendant's control, state what disposition was made of it and the reason for such disposition. In lieu of identifying any document, a true and correct copy thereof may be annexed to and incorporated in the Answers to these Interrogatories. Whenever a document or documents

are annexed to and incorporated in the Answers to Interrogatories, they must be clear and legible copies and must include the entire document; that is, all the pages and amendments, addenda, and attachments thereto.

(g) "Lender" shall mean Defendant First Home Mortgage Corporation ("First Home").

(h) "Servicer" shall mean Defendant First Guaranty Mortgage Corporation ("First Guaranty"), Defendant Roundpoint Mortgage Servicing Corporation ("Roundpoint"), and Defendant Rushmore Loan Management Services, LLC ("Rushmore").

(i) Where knowledge or information of, or possession or control by a party is requested or inquired of, such request or inquiry includes knowledge, information, possession, or control of or by the party's agent, servants, employees, representatives, and his attorneys.

(j) If you contend that one or more parts of an Interrogatory are objectionable, answer each portion of the Interrogatory that you do not contend is objectionable.

(k) If you claim privilege with respect to any information requested, specify the privilege claimed, the statute, the rule or decision giving rise to that privilege, and give a brief description of the nature of the information or document being withheld, including the author, recipient, and person to whom the information or document has been furnished previously.

(l) In producing the documents requested herein, indicate the specific requests in response to which each document or group of documents is being produced. Attach clearly legible copies to your response hereto, or produce such requested documents and things for inspection and copying at the law offices of the undersigned at 115 E. Washington Street, P.O. Box 487, Charles Town, WV 25414.

## OBJECTIONS BASED ON PRIVILEGE

For each document withheld under a claim of privilege or exemption, provide (i) a general description of the document, (ii) its author, (iii) the date of its preparation, and (iv) the present location of the document.

## INTERROGATORIES

1.  Please state the date and the reason that the date on which you became aware Plaintiff's mortgage loan account required an escrow account for property taxes.

**ANSWER:**

2.  Please describe in detail every communication between you and the Plaintiff. In response to this interrogatory, for each such communication, please state the name and job title of the person communicating with Plaintiff, the means of communication (e.g., letter, phone, email), the date on which said communication occurred, and a summary of the communication.

**ANSWER:**

3.  Do you have any insurance policy that may cover the acts/omissions alleged in the Plaintiff's complaint, including any policy for which coverage has been denied? If so, please produce a copy of the declaration page for each such policy; if coverage has been denied by any insurance company, please provide the denial of coverage letter from the insurance company.

**ANSWER:**

4.  Please identify all your individual employees or agents who may have knowledge of the facts of this case and provide each individual's contact information and the facts of which they have knowledge.

**ANSWER:**

5.  Please identify each individual that you plan to use as an expert in this litigation, the topics about which the expert may testify, the expert's qualifications, and what the expert

consulted in reaching his/her conclusions.

**ANSWER:**

6.  Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure your loan servicing and escrow account management complies with any statutory or regulatory consumer protection requirements., including, but not limited to, the West Virginia Consumer Credit and Protection Act (see Count VI and VII of the Complaint), the Fair Debt Collection Practices Act (see Count VIII of the Complaint), and the Real Estate Settlement Procedures Act (Count IX of the Complaint).

**ANSWER:**

7.  Please list and describe all policies or procedures you have had in place from January 1, 2015, to ensure that escrow items, particularly property taxes, are paid in a timely fashion.

**ANSWER:**

8.  Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure escrow accounts are correctly billed and are not overbilled.

**ANSWER:**

9.  Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure that accounts are refunded or credited when overbilled.

**ANSWER:**

10. Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure the accurate calculation of real estate taxes owed by each account.

**ANSWER:**

11. Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that describe in detail your practices and procedures for ensuring that the escrow

accounts you manage are accurately maintained.

**ANSWER:**

12. Please list and describe all policies and procedures you have had in place from January 1, 2015, to ensure that property taxes are paid on multi-parcel mortgages.

**ANSWER:**

13. Did/do you have a written agreement with the Lender or Servicer, which would govern any party's conduct in relation to billing, charging, or refunding money? If so, please identify and describe each responsive agreement, including the title, date, and substance of the agreement, and produce a copy of said agreement.

**ANSWER:**

14. Please identify each person who handled or in any way dealt with your attempts to bill or collect money from the Plaintiff's account.

**ANSWER:**

15. Please identify each person or mortgage account in West Virginia for whom or for which your payment for an escrow item from an escrow account more than thirty days after the escrow item payment was due since January 1, 2015.

**ANSWER:**

16. Please identify each person or employee who handled or in any way dealt with such documents discussed in Interrogatory #11.

**ANSWER:**

## REQUESTS FOR PRODUCTION

1. Please produce copies of all contracts or documents evidencing any agreements between the Plaintiff and you.

2. Please produce copies of records of all contact with Plaintiff.

3. Please produce copies of records of billing and communications regarding the billing of the Plaintiff's mortgage and/or escrow account.

4. Please produce copies of your policies for billing mortgage accounts applicable during the last ten years.

5. Please produce copies of any exhibits you may offer at the trial of this matter.

6. Please produce copies of any other writings or documents in your control related to or in any way relevant to the subject matter of this action.

7. Provide copies of all notes, memoranda, diaries, messages, and/or correspondence between the you, the Lender or Servicers, and any other person regarding the Plaintiff or the Plaintiff's account.

8. To the extent not included in the response to requires for production #7, please produce copies of records of all other communication regarding the Plaintiff or the Plaintiff's account, including but not limited to internal communications within your organization, including but not limited to memoranda, emails, facsimiles, log entries, and notes.

9. Please produce all documents in your possession that contain anywhere on the document (1) Darryl Beans' name; (2) Darryl Beans' account number(s); or (3) Darryl Beans' mailing address.

10. Please produce copies of any civil or criminal complaints involving the same general context or subject matter as the transaction that is the subject matter of this action pending against you in West Virginia in the last three years.

11. Please produce copies of all expert reports prepared for this litigation, including the expert's qualifications and the basis of the expert's opinion, as well as copies of any documents

consulted by the expert in preparing the report.

12. Please produce copies of all guidelines, policies, procedures, or documents relating to billing, overbilling, and crediting of accounts that were in place during any period from 2015 to the present.

13. Please produce copies of all guidelines, policies, procedures, or documents relating to servicing of accounts, including escrow accounts, that were in place during any period from 2015 to the present.

14. Please produce copies of all guidelines, policies, procedures, or documents relating to accurate real estate tax calculations, that were in place during any period from 2015 to the present.

15. Please produce copies of all employee training materials regarding account servicing and quality assurance used during any period from 2015 to present.

16. Please produce copies of all guidelines, policies, procedures, or documents relating to servicing multi-parcel mortgages.

17. Please produce copies of the complete file on the Plaintiff and real estate owned by the Plaintiff.

18. Please produce all copies of all policies and procedures in place from the date of origination of Plaintiff's file to the present relating to quality assurance and prevention of error in the billing of consumer accounts.

19. Please provide a detailed accounting of all the Plaintiff's accounts, including escrow accounts linked to their mortgage account(s).

**DARRYL BEANS**
By Counsel

/s/ Stephen G. Skinner
Stephen G. Skinner

WVSB ID: 6725
SKINNER LAW FIRM
PO BOX 487
Charles Town, WV 25414
304-725-7029
sskinner@skinnerfirm.com

E-FILED | 3/23/2023 10:44 AM
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA

DARRYL BEANS,

      **Plaintiff,**

v.                          **Civil Action No. _____**

**FIRST HOME MORTGAGE CORPORATION, FIRST GUARANTY
MORTGAGE CORPORATION, ROUNDPOINT MORTGAGE
SERVICING CORPORATION, and
RUSHMORE LOAN MANAGEMENT SERVICES, LLC,**

      **Defendants.**

## PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS TO RUSHMORE LOAN MANAGEMENT SERVICES, LLC

Pursuant to the West Virginia Rules of Civil Procedure for trial courts of record, you are required to answer or respond or admit or deny the following interrogatories, requests for production, and requests for admission, separately and fully, in writing and under oath and to serve your answers upon the undersigned within **forty-five (45)** days of service upon you.

### DEFINITIONS

(a)    These Interrogatories are continuing in character with regard to all information in your possession or that of your attorney to require you or your attorney to file supplementary answers if you obtain further or different information before trial.

(b)    The term "documents" includes, but is not limited to, all paper material of any kind, whether written, typed, printed, punched, filmed or marked in any way; recording tapes or wires; any form of magnetic data, whether stored on disc, drum, core or in any other matter; film, photographs, movies, or any graphic matter, however, produced or reproduced; and all mechanical or electronic sound recording or transcripts thereof; and every other device or medium in which or through which information of any type is transmitted, recorded, or

preserved.  The copies of such documents must be clear and legible, and must include the entire document; that is, all the pages, amendments, addenda, and attachments.

(c) "Yours" and "you" refer to the person to whom the Interrogatories are addressed, and all its predecessors or successors as well as its agents, employees, servants, representatives, subrogors, subrogees, and its attorneys, and all other persons acting or purporting to act in its behalf or at its direction.

(d)   The term "person" includes a corporation, partnership, or other business association; any trade or industry association; a natural person; any government or governmental body, commission, board, or agency; or any other entity.

(e)   "Identify" or "identification" when used in reference to a natural person means to state his or her full name, present address, home, and business telephone numbers, and his or her present position and business affiliation. When used in reference to a person other than a natural person, "identify" or "identification" means to state whether such a person is a corporation, partnership, or other organization, and its name, present and last known address, telephone number, and principal place of business. Once any person has been identified properly, it shall be sufficient thereafter when identifying that same person to state his or her name only.

(f) "Identify" or "identification" when used in reference to a document means to state the date, the author (or, if different, the signer or signers), the addresses, type of document (e.g., letter, memoranda, telegram, chart, photograph, x-ray, sound tape, computer program, etc.) If any such document was, but is no longer in Crossclaim Defendant's possession or subject to Crossclaim Defendant's control, state what disposition was made of it and the reason for such disposition. In lieu of identifying any document, a true and correct copy thereof may be annexed to and incorporated in the Answers to these Interrogatories. Whenever a document or documents

are annexed to and incorporated in the Answers to Interrogatories, they must be clear and legible copies and must include the entire document; that is, all the pages and amendments, addenda, and attachments thereto.

(g) "Lender" shall mean Defendant First Home Mortgage Corporation ("First Home").

(h) "Servicer" shall mean Defendant First Guaranty Mortgage Corporation ("First Guaranty"), Defendant Roundpoint Mortgage Servicing Corporation ("Roundpoint"), and Defendant Rushmore Loan Management Services, LLC ("Rushmore").

(i) Where knowledge or information of, or possession or control by a party is requested or inquired of, such request or inquiry includes knowledge, information, possession, or control of or by the party's agent, servants, employees, representatives, and his attorneys.

(j) If you contend that one or more parts of an Interrogatory are objectionable, answer each portion of the Interrogatory that you do not contend is objectionable.

(k) If you claim privilege with respect to any information requested, specify the privilege claimed, the statute, the rule or decision giving rise to that privilege, and give a brief description of the nature of the information or document being withheld, including the author, recipient, and person to whom the information or document has been furnished previously.

(l) In producing the documents requested herein, indicate the specific requests in response to which each document or group of documents is being produced. Attach clearly legible copies to your response hereto, or produce such requested documents and things for inspection and copying at the law offices of the undersigned at 115 E. Washington Street, P.O. Box 487, Charles Town, WV 25414.


**OBJECTIONS BASED ON PRIVILEGE**

For each document withheld under a claim of privilege or exemption, provide (i) a general description of the document, (ii) its author, (iii) the date of its preparation, and (iv) the present location of the document.

## INTERROGATORIES

1.  Please state the date and the reason that the date on which you became aware Plaintiff's mortgage loan account required an escrow account for property taxes.

**ANSWER:**

2.  Please describe in detail every communication between you and the Plaintiff. In response to this interrogatory, for each such communication, please state the name and job title of the person communicating with Plaintiff, the means of communication (e.g., letter, phone, email), the date on which said communication occurred, and a summary of the communication.

**ANSWER:**

3.  Do you have any insurance policy that may cover the acts/omissions alleged in the Plaintiff's complaint, including any policy for which coverage has been denied? If so, please produce a copy of the declaration page for each such policy; if coverage has been denied by any insurance company, please provide the denial of coverage letter from the insurance company.

**ANSWER:**

4.  Please identify all your individual employees or agents who may have knowledge of the facts of this case and provide each individual's contact information and the facts of which they have knowledge.

**ANSWER:**

5.  Please identify each individual that you plan to use as an expert in this litigation, the topics about which the expert may testify, the expert's qualifications, and what the expert

consulted in reaching his/her conclusions.

**ANSWER:**

6.  Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure your loan servicing and escrow account management complies with any statutory or regulatory consumer protection requirements., including, but not limited to, the West Virginia Consumer Credit and Protection Act (see Count VI and VII of the Complaint), the Fair Debt Collection Practices Act (see Count VIII of the Complaint), and the Real Estate Settlement Procedures Act (Count IX of the Complaint).

**ANSWER:**

7.  Please list and describe all policies or procedures you have had in place from January 1, 2015, to present to ensure that escrow items, particularly property taxes, are paid in a timely fashion.

**ANSWER:**

8.  Please list and describe all policies and procedures you have had in place since January 1, 2015, to present that ensure escrow accounts are correctly billed and are not overbilled.

**ANSWER:**

9.  Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure that accounts are refunded or credited when overbilled.

**ANSWER:**

10. Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure the accurate calculation of real estate taxes owed by each account.

**ANSWER:**

11. Please list and describe all policies and procedures you have had in place from January 1,

2015, to present that describe in detail your practices and procedures for ensuring that the escrow accounts you manage are accurately maintained.

**ANSWER:**

12. Please list and describe all policies and procedures you have had in place from January 1, 2015, to ensure that property taxes are paid on multi-parcel mortgages.

**ANSWER:**

13. Did/do you have a written agreement with the Lender or Servicer, which would govern any party's conduct in relation to billing, charging, or refunding money? If so, please identify and describe each responsive agreement, including the title, date, and substance of the agreement, and produce a copy of said agreement.

**ANSWER:**

14. Please identify each person who handled or in any way dealt with your attempts to bill or collect money from the Plaintiff's account.

**ANSWER:**

15. Please identify each person or mortgage account in West Virginia to whom or for which your payment for an escrow item from an escrow account more than thirty days after the escrow item payment was due since January 1, 2015.

**ANSWER:**

16. Please identify each person or employee who handled or in any way dealt with such documents discussed in Interrogatory #11.

**ANSWER:**

## REQUESTS FOR PRODUCTION

1. Please produce copies of all contracts or documents evidencing any agreements between

the Plaintiff and you.

2.  Please produce copies of records of all contact with Plaintiff.

3.  Please produce copies of records of billing and communications regarding the billing of the Plaintiff's mortgage and/or escrow account.

4.  Please produce copies of your policies for billing mortgage accounts applicable during the last ten years.

5.  Please produce copies of any exhibits you may offer at the trial of this matter.

6.  Please produce copies of any other writings or documents in your control related to or in any way relevant to the subject matter of this action.

7.  Provide copies of all notes, memoranda, diaries, messages, and/or correspondence between the you, the Lender or Servicers, and any other person regarding the Plaintiff or the Plaintiff's account.

8.  To the extent not included in the response to requires for production #7, please produce copies of records of all other communication regarding the Plaintiff or the Plaintiff's account, including but not limited to internal communications within your organization, including but not limited to memoranda, emails, facsimiles, log entries, and notes.

9.  Please produce all documents in your possession that contain anywhere on the document (1) Darryl Beans' name; (2) Darryl Beans' account number(s); or (3) Darryl Beans' mailing address.

10. Please produce copies of any civil or criminal complaints involving the same general context or subject matter as the transaction that is the subject matter of this action pending against you in West Virginia in the last three years.

11. Please produce copies of all expert reports prepared for this litigation, including the

expert's qualifications and the basis of the expert's opinion, as well as copies of any documents consulted by the expert in preparing the report.

12. Please produce copies of all guidelines, policies, procedures, or documents relating to billing, overbilling, and crediting of accounts that were in place during any period from 2015 to the present.

13. Please produce copies of all guidelines, policies, procedures, or documents relating to servicing of accounts, including escrow accounts, that were in place during any period from 2015 to the present.

14. Please produce copies of all guidelines, policies, procedures, or documents relating to accurate real estate tax calculations, that were in place during any period from 2015 to the present.

15. Please produce copies of all employee training materials regarding account servicing and quality assurance used during any period from 2015 to present.

16. Please produce copies of all guidelines, policies, procedures, or documents relating to servicing multi-parcel mortgages.

17. Please produce copies of the complete file on the Plaintiff and real estate owned by the Plaintiff.

18. Please produce all copies of all policies and procedures in place from the date of origination of Plaintiff's file to the present relating to quality assurance and prevention of error in the billing of consumer accounts.

19. Please provide a detailed accounting of all the Plaintiff's accounts, including escrow accounts linked to their mortgage account(s).

**DARRYL BEANS**
By Counsel

/s/ Stephen G. Skinner
Stephen G. Skinner
WVSB ID: 6725
SKINNER LAW FIRM
PO BOX 487
Charles Town, WV 25414
304-725-7029
sskinner@skinnerfirm.com

E-FILED | 2/23/2023 10:04 PM
CC-19-2023-C-55
Jefferson County Circuit Clerk
Tina Renner

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA**

**DARRYL BEANS,**

      **Plaintiff,**

**v.**                        **Civil Action No. _____**

**FIRST HOME MORTGAGE CORPORATION, FIRST GUARANTY
MORTGAGE CORPORATION, ROUNDPOINT MORTGAGE
SERVICING CORPORATION, and
RUSHMORE LOAN MANAGEMENT SERVICES, LLC,**

      **Defendants.**

### PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS TO FIRST HOME MORTGAGE CORPORATION

Pursuant to the West Virginia Rules of Civil Procedure for trial courts of record, you are required to answer or respond or admit or deny the following interrogatories, requests for production, and requests for admission, separately and fully, in writing and under oath and to serve your answers upon the undersigned within **forty-five (45)** days of service upon you.

### DEFINITIONS

(a)   These Interrogatories are continuing in character with regard to all information in your possession or that of your attorney so as to require you or your attorney to file supplementary answers if you obtain further or different information before trial.

(b)   The term "documents" includes, but is not limited to, all paper material of any kind, whether written, typed, printed, punched, filmed or marked in any way; recording tapes or wires; any form of magnetic data, whether stored on disc, drum, core or in any other matter; film, photographs, movies, or any graphic matter, however, produced or reproduced; and all mechanical or electronic sound recording or transcripts thereof; and every other device or medium in which or through which information of any type is transmitted, recorded, or

preserved. The copies of such documents must be clear and legible, and must include the entire document; that is, all the pages, amendments, addenda, and attachments.

(c) "Yours" and "you" refer to the person to whom the Interrogatories are addressed, and all its predecessors or successors as well as its agents, employees, servants, representatives, subrogors, subrogees, and its attorneys, and all other persons acting or purporting to act in its behalf or at its direction.

(d)    The term "person" includes a corporation, partnership, or other business association; any trade or industry association; a natural person; any government or governmental body, commission, board, or agency; or any other entity.

(e)    "Identify" or "identification" when used in reference to a natural person means to state his or her full name, present address, home, and business telephone numbers, and his or her present position and business affiliation. When used in reference to a person other than a natural person, "identify" or "identification" means to state whether such a person is a corporation, partnership, or other organization, and its name, present and last known address, telephone number, and principal place of business. Once any person has been identified properly, it shall be sufficient thereafter when identifying that same person to state his or her name only.

(f) "Identify" or "identification" when used in reference to a document means to state the date, the author (or, if different, the signer or signers), the addresses, type of document (e.g., letter, memoranda, telegram, chart, photograph, x-ray, sound tape, computer program, etc.) If any such document was, but is no longer in Crossclaim Defendant's possession or subject to Crossclaim Defendant's control, state what disposition was made of it and the reason for such disposition. In lieu of identifying any document, a true and correct copy thereof may be annexed to and incorporated in the Answers to these Interrogatories. Whenever a document or documents

are annexed to and incorporated in the Answers to Interrogatories, they must be clear and legible copies and must include the entire document; that is, all the pages and amendments, addenda, and attachments thereto.

(g) "Lender" shall mean Defendant First Home Mortgage Corporation ("First Home").

(h) "Servicer" shall mean Defendant First Guaranty Mortgage Corporation ("First Guaranty"), Defendant Roundpoint Mortgage Servicing Corporation ("Roundpoint"), and Defendant Rushmore Loan Management Services, LLC ("Rushmore").

(i)    Where knowledge or information of, or possession or control by a party is requested or inquired of, such request or inquiry includes knowledge, information, possession, or control of or by the party's agent, servants, employees, representatives, and his attorneys.

(j)    If you contend that one or more parts of an Interrogatory are objectionable, answer each portion of the Interrogatory that you do not contend is objectionable.

(k)    If you claim privilege with respect to any information requested, specify the privilege claimed, the statute, the rule or decision giving rise to that privilege, and give a brief description of the nature of the information or document being withheld, including the author, recipient, and person to whom the information or document has been furnished previously.

(l)    In producing the documents requested herein, indicate the specific requests in response to which each document or group of documents is being produced. Attach clearly legible copies to your response hereto, or produce such requested documents and things for inspection and copying at the law offices of the undersigned at 115 E. Washington Street, P.O. Box 487, Charles Town, WV 25414.


**OBJECTIONS BASED ON PRIVILEGE**

For each document withheld under a claim of privilege or exemption, provide (i) a general description of the document, (ii) its author, (iii) the date of its preparation, and (iv) the present location of the document.

## INTERROGATORIES

1. Please state the date and the reason that the date on which you became aware Plaintiff's mortgage loan account required an escrow account for property taxes.

**ANSWER:**

2. Please describe in detail every communication between you and the Plaintiff. In response to this interrogatory, for each such communication, please state the name and job title of the person communicating with Plaintiff, the means of communication (e.g., letter, phone, email), the date on which said communication occurred, and a summary of the communication.

**ANSWER:**

3. Do you have any insurance policy that may cover the acts/omissions alleged in the Plaintiff's complaint, including any policy for which coverage has been denied? If so, please produce a copy of the declaration page for each such policy; if coverage has been denied by any insurance company, please provide the denial of coverage letter from the insurance company.

**ANSWER:**

4. Please identify all your individual employees or agents who may have knowledge of the facts of this case and provide each individual's contact information and the facts of which they have knowledge.

**ANSWER:**

5. Please identify each individual that you plan to use as an expert in this litigation, the topics about which the expert may testify, the expert's qualifications, and what the expert

consulted in reaching his/her conclusions.

**ANSWER:**

6.  Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure your loan servicing and escrow account management complies with any statutory or regulatory consumer protection requirements., including, but not limited to, the West Virginia Consumer Credit and Protection Act (see Count VI and VII of the Complaint), the Fair Debt Collection Practices Act (see Count VIII of the Complaint), and the Real Estate Settlement Procedures Act (Count IX of the Complaint).

**ANSWER:**

7.  Please list and describe all policies or procedures you have had in place from January 1, 2015, to ensure that escrow items, particularly property taxes, are paid in a timely fashion.

**ANSWER:**

8.  Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure escrow accounts are correctly billed and are not overbilled.

**ANSWER:**

9.  Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure that accounts are refunded or credited when overbilled.

**ANSWER:**

10. Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that ensure the accurate calculation of real estate taxes owed by each account.

**ANSWER:**

11. Please list and describe all policies and procedures you have had in place from January 1, 2015, to present that describe in detail your practices and procedures for ensuring that the escrow

accounts you manage are accurately maintained.

**ANSWER:**

12. Please list and describe all policies and procedures you have had in place from January 1, 2015, to ensure that property taxes are paid on multi-parcel mortgages.

**ANSWER:**

13. Did/do you have a written agreement with the Lender or Servicer, which would govern any party's conduct in relation to billing, charging, or refunding money? If so, please identify and describe each responsive agreement, including the title, date, and substance of the agreement, and produce a copy of said agreement.

**ANSWER:**

14. Please identify each person who handled or in any way dealt with your attempts to bill or collect money from the Plaintiff's account.

**ANSWER:**

15. Please identify each person or mortgage account in West Virginia for whom or for which your payment for an escrow item from an escrow account more than thirty days after the escrow item payment was due since January 1, 2015.

**ANSWER:**

16. Please identify each person or employee who handled or in any way dealt with such documents discussed in Interrogatory #11.

**ANSWER:**

## REQUESTS FOR PRODUCTION

1. Please produce copies of all contracts or documents evidencing any agreements between the Plaintiff and you.

2.  Please produce copies of records of all contact with Plaintiff.

3.  Please produce copies of records of billing and communications regarding the billing of the Plaintiff's mortgage and/or escrow account.

4.  Please produce copies of your policies for billing mortgage accounts applicable during the last ten years.

5.  Please produce copies of any exhibits you may offer at the trial of this matter.

6.  Please produce copies of any other writings or documents in your control related to or in any way relevant to the subject matter of this action.

7.  Provide copies of all notes, memoranda, diaries, messages, and/or correspondence between the you, the Lender or Servicers, and any other person regarding the Plaintiff or the Plaintiff's account.

8.  To the extent not included in the response to requires for production #7, please produce copies of records of all other communication regarding the Plaintiff or the Plaintiff's account, including but not limited to internal communications within your organization, including but not limited to memoranda, emails, facsimiles, log entries, and notes.

9.  Please produce all documents in your possession that contain anywhere on the document (1) Darryl Beans' name; (2) Darryl Beans' account number(s); or (3) Darryl Beans' mailing address.

10.  Please produce copies of any civil or criminal complaints involving the same general context or subject matter as the transaction that is the subject matter of this action pending against you in West Virginia in the last three years.

11. Please produce copies of all expert reports prepared for this litigation, including the expert's qualifications and the basis of the expert's opinion, as well as copies of any documents

consulted by the expert in preparing the report.

12. Please produce copies of all guidelines, policies, procedures, or documents relating to billing, overbilling, and crediting of accounts that were in place during any period from 2015 to the present.

13. Please produce copies of all guidelines, policies, procedures, or documents relating to servicing of accounts, including escrow accounts, that were in place during any period from 2015 to the present.

14. Please produce copies of all guidelines, policies, procedures, or documents relating to accurate real estate tax calculations, that were in place during any period from 2015 to the present.

15. Please produce copies of all employee training materials regarding account servicing and quality assurance used during any period from 2015 to present.

16. Please produce copies of all guidelines, policies, procedures, or documents relating to servicing multi-parcel mortgages.

17. Please produce copies of the complete file on the Plaintiff and real estate owned by the Plaintiff.

18. Please produce all copies of all policies and procedures in place from the date of origination of Plaintiff's file to the present relating to quality assurance and prevention of error in the billing of consumer accounts.

19. Please provide a detailed accounting of all the Plaintiff's accounts, including escrow accounts linked to their mortgage account(s).

**DARRYL BEANS**
By Counsel

/s/ Stephen G. Skinner
Stephen G. Skinner

WVSB ID: 6725
SKINNER LAW FIRM
PO BOX 487
Charles Town, WV 25414
304-725-7029
sskinner@skinnerfirm.com